# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| RANDALL J. KEYSTONE, | ) |
|     Plaintiff, | ) Civil Action No. 7:16CV00316 |
| | ) |
| v. | ) MEMORANDUM OPINION |
| | ) |
| HENRY PONTON, *et al.* | ) By: Norman K. Moon |
|     Defendants. | ) United States District Judge |
| | ) |

Randall J. Keystone, an inmate proceeding *pro se*, filed this action under the Civil Rights Act, 42 U.S.C. § 1983, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5. In his amended complaint, he alleges that defendant prison officials have failed to provide him a healthy diet compatible with his Mennonite religion. The defendants[1] have filed a motion for summary judgment, Keystone has responded,[2] and the matter ripe is disposition. After review of the record, I conclude that the defendants' motion must be granted.

## I. Background

Keystone has been confined for the past several years at confined at Red Onion, a VDOC prison facility. The VDOC offers the Common Fare menu for inmates who claim to have religious dietary requirements that they cannot meet under the regular VDOC menus. "Common Fare is designed to meet all known religious dietary restrictions, including non-pork, Kosher, and

---

[1] The defendants are Virginia Department of Corrections ("VDOC") Director Harold Clarke; Mark Engelke, Manager of Food Services; Food Services Dietician Natarcha Gregg; Regional Administrators Henry Ponton and Marcus Elam; Red Onion State Prison ("Red Onion") Warden E. Barksdale; Assistant Warden J. Hamilton; and Chaplain Clifton Cauthorne.

[2] In addition to his response to the defendants' motion, Keystone has filed supplementary exhibits that he moves to add to his claims (Docket Nos. 52 and 59-63). I will grant these motions and consider these submissions.

halal requirements." Mem. Supp. Mot. Summ. J., Gregg Aff. ¶ 5, Docket No. 50-1. "A Registered Dietitian . . . ensure[s] that the [VDOC] menus meet the nationally recommended allowances for basic nutrition."[3]

Because the Common Fare program is a specialized meal service, an inmate who wishes to participate must notify his counselor, provide documentation, and undergo an approval process. If the inmate is approved for participation, he must then sign a Common Fare Agreement, committing to ground rules for the program and agreeing that it provides him an appropriate religious diet. The rules on the agreement form include accepting a minimum percentage of his Common Fare meals each month. According to the agreement form, violating one of the rules will result in removal from the program for six months after the first violation, for one year after the second violation, and for four years after the third violation.

Keystone alleges that he "ascribes to the Mennonite religion (leaning to Amish Branch) and has on and off since childhood." Am. Compl. ¶ 4, Docket No. 28. According to Keystone, among other things, his religion "calls for keeping things 'pure and simple,'" including foods. *Id.* Foods should be "'natural and wholesome,' meaning without a bunch of additives, preservatives and processing, etc. Things such as raw and cold foods like fresh fruit & fresh vegetables, cereals & grains, beans & legumes, nuts, cheese, cold-cuts, soy products, etc." *Id.*

Keystone claims that his religious diet "was basically being met" for a time under the VDOC's Common Fare menu. He was first approved for Common Fare in January 2011. According to Keystone, at this time, Common Fare menus called for "fresh/raw/cold meals 2-3 times a day." *Id.* at ¶ 5. The meals were "90% cold trays (except a hot rice bowl 3X a week)— things like cold-beans, fresh raw vegetables (lettuce, tomatoes, broccoli, cauliflower, onions,

---

[3] *See, e.g.,* Food Service Manual, *VDOC Procedures* (Nov. 1, 2015), https://www.vadoc.virginia.gov/about/procedures/documents/500/FSM-C3.pdf.

2

celery, . . . radishes, peppers, etc.), dry cereals & grains." *Id.* at ¶ 8. On June 30, 2011, however, Keystone asked to be removed from Common Fare, allegedly because of religious struggles. Keystone was reapproved for Common Fare in April 2014. He voluntarily withdrew a second time from Common Fare in February 2015, again citing personal religious struggles. More than a year later, he reapplied and was approved for the diet in July 2015.

In the fall of 2015, the Common Fare menu changed from all cold meals to include both hot and cold meals. Keystone did not welcome the changes. He complains that the new menu "deleted most all of the fresh, raw, and cold meals" and substituted "greasy pancakes & French toasts instead of cereals and oats, numerous boiled eggs with high cholesterol, cooked/oily tuna cakes, the vegetables cooked & soggy with a lot of the nutrients boiled out." *Id* at ¶ 7. He claims that the new menu provides cake for dessert, instead of the fruits or juices served for dessert under the prior menu.

Keystone tried the new Common Fare menu for a four-week menu cycle and allegedly found it to be "extremely non-compatible with his dietary needs." *Id.* at ¶ 9. He also alleges that "[i]t caused him to become constipated, energy-loss, weight-loss, appetite loss, depression, frustration, etc. . . . And to almost give up on religion it affected him so bad! Very sad & iritative [sic] indeed, as if he [had] been abandoned by God!" *Id.* So, in November 2015, he asked to be removed from the Common Fare list and returned to eating the regular VDOC meals.

Keystone says the regular meals were "no better but they were not condoning the religious aspect in a wrongfull [sic] manner." *Id.* He claims that on the regular meals, his weight dropped from 145 lbs. to 120 lbs. over a one-year period, returning to 125 pounds after he switched to the vegetarian option. He allegedly suffered from constipation and had to request stool softeners, laxatives, and fiber supplements. He also claims depression and loss of energy

3

that caused him to forego outside recreation for months. He asserts that his dietary frustrations have interfered with his "thoughts and prayers." *Id.* at ¶ 12.

Keystone explains that he suffers from gastro esophageal reflux disorder ("GERD"). Because of this condition, when Keystone eats "greasy/oily foods and processed foods," like the Common Fare's fried tuna cakes or similar foods on the regular menu, he suffers heartburn and painful acid reflux. Mot. Am. ¶¶ 3-4, Docket No. 39.

Keystone has explained his religious dietary problems to all of the defendants—the warden and his assistant, the chaplain, and to the VDOC dietician and administrators. None of these individuals has intervened to ensure that Keystone could receive a diet of mostly uncooked fruits and vegetables.

In response to Keystone's claims, the dietician, Ms. Gregg states, "Though there were some changes to the Common Fare menu, these changes have not affected the nutritional value offered" by that menu. Gregg Aff. at ¶ 12. She states that she sets up each four-week menu cycle of the program to meet or exceed the recommended dietary nutritional allowances as defined by the Food and Nutrition Board of the National Academy of Sciences. Kitchen staff members at each prison are to serve portions in the quantities indicated on the Common Fare menus. Ms. Gregg also denies that the cooking methods used cause vegetables to lose their nutritional value and explains that excess oil is drained from the tuna cakes before serving. Tuna is also served as cold tuna salad. She reports that cereals have not been deleted from Common Fare, as Keystone has alleged—cooked oatmeal or farina are served daily. Ms. Gregg states that cake or rice pudding is offered for dessert in addition to, not in place of, fruit and fruit juices, which are served daily. Sample menus she provides from 2017 also reflect that Common Fare includes numerous servings of cereal, vegetables, and fruit every week. Some items served on

Common Fare are not included in the VDOC regular menus, such as the tuna cakes and soy rice mix. Ms. Gregg states, however, that "Common Fare participants receive the same beans, vegetables, peanut butter, fruit juice and beverages that are served on the regular menu." *Id.* at ¶ 6.

In February 2017, Keystone reapplied for Common Fare participation, after hearing that it was "a little better." Am. Compl. at ¶ 13. His request was denied, because he had voluntarily removed himself from the program on three prior occasions. Officials informed him that per policy, he would have to wait four years from his prior withdrawal to reapply. *See* Mem. Supp. Summ. J., Artrip Aff. Enclosure A, Operating Procedure ("OP") 841.3(IV)(B)(13)(e), Docket No. 50-2. Copies of the applicable operating procedure are available to all VDOC inmates. Keystone will be eligible to reapply for Common Fare meals beginning November 13, 2019. He is currently scheduled for release from prison in March 2019.

Liberally construed, Keystone's amended complaint asserts that the defendants have violated his rights under RLUIPA and the Constitution[4] (1) by denying him a diet compatible with his religious beliefs since the 2015 changes to the Common Fare diet and (2) by denying him reinstatement to the Common Fare program in February 2017 as a closer fit for his dietary beliefs than the regular menu. As relief, Keystone seeks both monetary damages and injunctive relief—directing that officials provide him with foods consistent with his beliefs.

---

[4] In his rebuttal brief (Docket No. 52), Keystone clarifies that he brings his claims under RLUIPA and the First, Eighth, and Fourteenth Amendments. Therefore, although the amended complaint mentions other constitutional provisions, the Americans with Disabilities Act, and the Rehabilitation Act, I consider any claim under these authorities to be abandoned. In any case, I find no factual support for any such claim in the record.

## II. Discussion

### A. Summary Judgment Review

I may grant summary judgment for the defendants if they "show[ ] that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted."[5] *Id.* at 249-50. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

When parties file cross-motions for summary judgment, the court examines each motion separately under the Rule 56 standard. *Defs. of Wildlife v. N.C. Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014). The court "scrutinizes" each party's case "to determine whether the [party] has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993). A nonmovant, to survive summary judgment, "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. He may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment supported by affidavits. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992).

---

[5]  I have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

In the Fourth Circuit, verified complaints by *pro se* prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Keystone, however, has filed an unverified amended complaint; it is neither notarized nor signed under penalty of perjury. "[T]he law is clear that a plaintiff cannot rely on an unverified complaint in opposing a motion for summary judgment." *See, e.g., Askins v. Belissary*, No. 4:12-CV-1856-RBH, 2014 WL 507279, at *7 (D.S.C. Feb. 6, 2014), *aff'd*, 564 F. App'x 46 (4th Cir. 2014).

Further, as a general rule, the non-movant must *respond* to a motion for summary judgment with affidavits, or other verified evidence, rather than relying on an unverified complaint or unverified response briefs. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also Williams*, 952 F.2d at 823. Keystone has responded to defendants' motion for summary judgment with an unverified response brief. He has failed, however, to provide any notarized affidavit or declaration under penalty of perjury (even his own), set out his own evidence about his religious beliefs, or contradict defendants' affidavits and version of the facts. I note that Keystone was given notice of his rights and responsibilities with regard to the motion for summary judgment filed against him in accordance with the requirements of *Roseboro v. Garrison,* 528 F. 2d 309, 310 (4th Cir. 1975). *See* Docket No. 51. Because Keystone has thus submitted no appropriate evidence, I will view the defendants' facts in the record as undisputed, but I may grant the motion only if defendants are entitled to summary judgment. Fed. R. Civ. P. 56(e)(2)-(3).

B. Initial Matters

Some of Keystone's claims for monetary damages have no basis in law. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that immunity bars official capacity claims for monetary damages); *Sossamon v. Texas*, 563 U.S. 277, 285-86 (2011) (finding damages not recoverable against defendants in official capacities under RLUIPA); *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009) (finding no RLUIPA claim for damages available against defendants in individual capacities).[6] Therefore, I will grant summary judgment for the defendants on all claims for monetary damages against them in their official capacities and on the claims for monetary damages under RLUIPA for the alleged past failure to accommodate Keystone's religious dietary practices. I will, however, address on the merits Keystone's claims for injunctive relief and his constitutional claims for damages.

C. Religious Rights

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."[7] *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). This right restricts prison policies that impose a substantial burden on a prisoner's right to practice his religion, including his sincerely held religious dietary beliefs. *Wall v. Wade*, 741 F.3d 492, 498 (4th Cir. 2014). For constitutional purposes, such a burden is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981).

---

[6] These cases address the immunity question only as it pertains to RLUIPA as an exercise of congressional spending power, and the statute also invokes congressional commerce power. *See* 42 U.S.C. § 2000cc-1(b). I am satisfied that Keystone's amended complaint does not present a factual basis for a claim of monetary damages under the Commerce Clause nexus of RLUIPA, however. *See, e.g., Rendelman*, 569 F.3d at 189.

[7] The First Amendment proscribes "law[s] respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend. I, §§ 1, 2.

"RLUIPA prohibits prisons from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that the burden furthers a compelling governmental interest by the least restrictive means." *Miles v. Moore*, 450 F. App'x 318, 319 (4th Cir. 2011) (unpublished) (citing 42 U.S.C. § 2000cc-1(a)). In placing a RLUIPA claim, the inmate "bears the initial burden to demonstrate that the prison's policy exacts a substantial burden on religious exercise."[8] *Incumaa v. Stirling*, 791 F.3d 517, 525 (4th Cir. 2016). Under RLUIPA, "a substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006).

"[P]rison officials may appropriately question whether a prisoner's religiosity, asserted as a basis for a requested accommodation . . . , is authentic." *Id.* at 188. Secular preferences are not protected by the First Amendment or RLUIPA. Also, "courts properly consider whether the inmate retains other means for engaging in the particular religious activity . . . in assessing whether a denial of the inmate's preferred method for engaging that religious exercise imposes a substantial burden." *Shabazz v. Va. Dep't Corr.*, 3:10CV638, 2013 WL 1098102, at *7 (E.D. Va. Mar. 15, 2013) (finding no substantial burden when inmate provided no clear definition of his religious dietary requirements and could discard nonconforming food items); *Shabazz v. Johnson*, No. 3:12CV282, 2015 WL 4068590, at *8 (E.D. Va. July 2, 2015) (finding no substantial burden where NOI inmate could self-select from Common Fare diet items to eat only once per day and consume only religiously acceptable, vegetarian foods). Moreover, prison practices do not substantially burden an inmate's rights if they merely make his "religious

---

[8] Only if the inmate proves that there is a substantial burden on his religious practice, does "the burden shift[ ] to the government to prove its policy furthers a compelling governmental interest by the least restrictive means." *Incumaa*, 791 F.3d at 525.

exercise more expensive or difficult," but are "not inherently inconsistent with [his] beliefs." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007).

The defendants argue that Keystone has failed to demonstrate that the diets available to him place a substantial burden on a sincerely held and *religious* practice, and I agree. Keystone alleges that he prefers having more uncooked foods in his meals than the current Common Fare or regular menus provide. He does not, however, provide admissible evidence showing clearly how his preferred diet is grounded in any particular religious requirement of his Mennonite faith or constitutes "an exercise of his religion." *Krieger v. Brown*, 496 F. App'x 322, 325 (4th Cir. 2012). Keystone also does not show that under the new Common Fare menu or the regular menus, he has been *forced* to eat foods prohibited by his religion, or why he cannot simply discard nonconforming food items, if he receives any. Indeed, Keystone's complaints about the meals available him are *not* that eating them violates his religious beliefs, but that some foods served under both menus cause him digestive problems. Furthermore, Keystone provides no evidence showing how the new Common Fare meals are more compatible with his believes than the regular menus available to him. In short, he offers no proof that the defendants' actions have pressured Keystone to violate his religious dietary beliefs. Thus, he fails to establish a disputed fact by which he could show that they have placed any substantial burden on those beliefs—by changing the Common Fare menu, by refusing his request for immediate reinstatement to Common Fare,[9] or by denying him some other specialized version of it. Thus, I conclude that

---

[9] As a side note to his religious diet claims, Keystone claims lack of notice that if he withdrew from Common Fare in 2015, he could not reapply for four years. The undisputed evidence is, however, that the Common Fare Agreement itself provided warning of that consequence, as did readily available procedures governing participation in the Common Fare program.

the defendants are entitled to summary judgment as to Keystone's claims under RLUIPA and the First Amendment.[10]

### D. Eighth Amendment

As part of its prohibition against cruel and unusual punishment, "[t]he Eighth Amendment requires that inmates be provided well-balanced meals, containing sufficient nutritional value to preserve health." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *see also Wilson v. Johnson*, 385 F. App'x 319, 320 (4th Cir. 2010) (citing cases for proposition that Eighth Amendment requires nutritionally adequate food). To make out a claim that his prison diet violated the Eighth Amendment, an inmate must allege facts showing that (1) objectively, the deprivation or harm inflicted to him was or will be "sufficiently serious," and (2) subjectively, the prison officials have "acted with a sufficiently culpable state of mind." *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998).

Under the objective prong of this standard, the inmate must show a deprivation that was or will be "extreme" and that amounts to more than the "routine discomfort that is part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993). Where the inmate alleges potential future harm from the challenged practice, the court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). The subjective prong of a deliberate indifference claim requires showing that a particular defendant actually knew of

---

[10] I note that Keystone argues no independent violation of the protections offered under the Fourteenth Amendment, and thus, he apparently cites this amendment only as related to his claims under the First and Eighth Amendments. *See, e.g., Board of Education of Kiryas v. Grumet*, 512 U.S. 687, 690 (1994) (holding that First Amendment applies to state governments through the Fourteenth Amendment); *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991) (holding that Eighth Amendment applies to state officials through the Fourteenth Amendment).

and disregarded a substantial, excessive risk of serious harm to the plaintiff's person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Keystone fails to present facts satisfying either the objective or subjective component for his Eighth Amendment claim about the diet provided to him under the VDOC inmate menus. Liberally construed, his amended complaint alleges that the new Common Fare meals and the regular meals have caused him various digestive troubles, including constipation and heartburn, for which he has sought medical care. He also claims to have lost weight and suffered depression since the Common Fare diet changes prompted him to withdraw and eat from the regular menus. Thus, Keystone apparently argues that the defendants are denying him a healthy diet, which they could remedy by simply reinstating the previous Common Fare menu as a healthier option.

It is undisputed, however, that both the new Common Fare menu and the VDOC regular menus are created by a licensed dietician, who has designed their contents to meet or exceed inmates' nutritional needs. The dietician asserts that the vegetables on these menus are the same and are cooked in a manner that allows them to retain their nutritional value. Keystone has presented no evidence to the contrary. The other food items that Keystone has identified as unhealthy—the fried foods, the dessert cakes, the pancakes and French toast—are, no doubt, sold in public grocery stores and served in restaurants. Keystone simply does not provide evidence that the VDOC menus present risks to inmates' health so grave that "it violates contemporary standards of decency to expose anyone unwillingly to such . . . risk[s]." *Helling*, 509 U.S. at 36. Thus, Keystone's Eighth Amendment claim that his diet is unhealthy fails on the objective prong.

I also cannot find that he has satisfied the subjective prong. There is no evidence in the record that any VDOC official, including the dietician, knows that the prison menus pose an unacceptable risk to Keystone's health. Keystone's personal digestive issues and mental health problems may have caused him discomfort and required medications. He presents no evidence that his diet alone has *caused* these problems, however. Furthermore, he does not allege that any doctor has diagnosed him with a medical need for a specialized diet. The defendants before me in this case are not physicians. They can rightfully rely on Keystone's treating physician to determine whether or when his medical conditions trigger a necessity for him to receive a different diet than the ones now available to him. *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995). The defendants are entitled to summary judgment on Keystone's Eighth Amendment claim.

### III. Conclusion

For the reasons stated, I will grant defendants' motion for summary judgment, and deny Keystone's motion for summary judgment.

ENTER: This 21st day of September, 2018.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE